UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Oscar Orlando Olivares and
Deisy Josefina Gorostiaga,

        Plaintiffs,                    **MEMORANDUM OPINION AND ORDER**
                                                        Civil No. 11-1626 ADM/JJK
       v.

PNC Bank, National Association, d/b/a
PNC Mortgage,

        Defendant.

___

Bryan R. Battina, Esq., Battina Law, PLLC, Wayzata, MN on behalf of Plaintiffs.

David A. Schooler, Esq. and Tara Reese Duginske, Esq., Briggs & Morgan, PA, Minneapolis, MN on behalf of Defendant.

___

## I.  INTRODUCTION

On September 2, 2011, the undersigned United States District Judge heard oral argument on Defendant PNC Bank, National Association's ("PNC") Motion to Dismiss [Docket No. 5]. Plaintiffs Oscar Orlando Olivares and Deisy Josefina Gorostiaga (collectively, "Plaintiffs") oppose the motion.  For the reasons set forth below, the motion is granted.

## II.  BACKGROUND[1]

Plaintiffs own a home in Wright County, Minnesota.  Notice of Removal [Docket No. 1] Ex. 1, Complaint ("Compl.") ¶ 4.  Plaintiffs' home is secured by a mortgage from Defendant PNC, which also services the mortgage.  Id.  Sometime in early 2010, Plaintiffs defaulted on their home loan.  See id. ¶ 5.  Plaintiffs and PNC began negotiating a loan modification.  Id. ¶ 6.

___

[1] In considering Defendant's Motion to Dismiss, the Court considers the facts alleged in Plaintiffs' Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Through the loan modification negotiated with Plaintiffs, PNC sought to participate in the Home Affordable Modification Program ("HAMP"). See id. ¶ 9; David A. Schooler Aff. [Docket No. 10] Ex. B (the "September 2010 Letter").  HAMP was introduced in 2009 as part of the Making Home Affordable Program, a response to the mortgage foreclosure crisis in this country.  Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages, version 3.3, ("Handbook v3.3") 11–12 (Sept. 1, 2011), https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_33.pdf.  HAMP provides mortgage lenders and servicers with incentives to modify certain home loans rather than institute foreclosure proceedings.

In September 2010, PNC sent Plaintiffs a letter stating "Congratulations! You are approved to enter into a trial period plan under the Home Affordable Modification Program!" September 2010 Letter.[2]  The letter then set out a schedule of three trial payments, to be made the first day of October, November, and December 2010.  Id.  The letter stated "Once you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan."  Id.  The letter further stated that PNC would not foreclose on the property during the trial period as long as payments were made in accordance with the new schedule.  Id.  Further, PNC avers that the September 2010 Letter was issued with reference to a November 2009 "Home Affordable Modification Trial Period Plan" between Plaintiffs and National City Mortgage.  Schooler Aff. Ex. A.

Plaintiffs timely made the three trial payments, which PNC accepted, but their home loan was not modified.  Compl. ¶¶ 12-15.  Plaintiffs brought this action in Minnesota state court

---

[2] The September 2010 Letter is not on numbered pages, and as such "pincites" will not be provided.

2

seeking damages for breach of contract, promissory estoppel, negligent misrepresentation, consumer fraud, and deceptive trade practices as well as for injunctive relief.  At oral argument, Plaintiffs, through counsel, averred that although the loan had not been modified, no foreclosure proceedings had been initiated against the property.  PNC now moves to dismiss, arguing that Plaintiffs' claims fail because HAMP does not create a private cause of action and because the claims fail on their merits.

### III.  DISCUSSION

A.      **Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.     HAMP Preemption**

As an initial matter, PNC insists that Plaintiffs' claims must be dismissed because of their relation to HAMP. Indeed, the September 2010 Letter referenced HAMP and it is not disputed that PNC sought to modify the loan pursuant to HAMP. However, Plaintiffs' claims, on their face, invoke Minnesota statutory and common law, not HAMP. Therefore, the extent to which HAMP precludes such claims must be considered.

In response to the 2008 financial crisis, Congress enacted the Emergency Economic Stabilization Act ("EESA"), 12 U.S.C. §§ 5201–5253, which included the Troubled Asset Relief Program ("TARP") established with the aim of "purchas[ing] . . . troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary." 12 U.S.C. § 5211(a)(1). In 2009, under the Secretary of Treasury's (the "Secretary") discretionary authority to "facilitate loan modifications to prevent avoidable foreclosures," 12 U.S.C. § 5219(a)(1), the Secretary introduced the "Making Home Affordable Program," of which HAMP is a part.

HAMP, in turn, provides compensation to mortgage servicers that modify certain loans. Handbook v3.3 103-08, Ch. II §13. To receive compensation, HAMP requires servicers to modify only loans meeting established eligibility criteria. See id. at 50-53, Ch. II § 1. HAMP also requires servicers to undertake specific actions in availing themselves of the program. For example, with respect to communication with borrowers, servicers must provide a toll-free

4

telephone number and must have written procedures and personnel in place to provide timely responses to inquiries. Id. at 54-55, Ch. II § 2.1. Judicial review under HAMP is limited to an administrative action against the Secretary. 12 U.S.C. § 5229(a)(1). HAMP does not create a private right of action. Marks v. Bank of Am., N.A., No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010).

However, PNC's bald assertion that "HAMP does not provide Plaintiff with a right to privately enforce its terms," Def.'s Mem. of Law in Supp. of its Mot. to Dismiss [Docket No. 8] 1, is insufficient to preclude Plaintiffs from asserting their claims here. Surely, Plaintiffs could not invoke HAMP to assert a claim in federal court for failure to provide a toll-free telephone number, for failure to have written procedures for answering complaints, or to otherwise rely on the substance of HAMP for their claims. But, Plaintiffs here do not depend on HAMP creating a private cause of action for their claims; their claims are asserted under the protections given to them by the laws of Minnesota.

Courts have reached differing results regarding the viability of claims related to HAMP. Some courts have held that state law claims are precluded if they are not sufficiently "independent" of HAMP. E.g., Bourdelais v. J.P. Morgan Chase, Civil No. 3:10CV670-HEH, 2011 WL 1306311, *4-6 (E.D. Va. April 1, 2011); Wigod v. Wells Fargo Bank, N.A., No. 10 CV 2348, 2011 WL 250501, at *4-10 (N.D. Ill. Jan. 25, 2011); Vida v. OneWest Bank, F.S.B., Civ. No. 10-987-AC, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010) ("[T]he facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via HAMP and are not sufficiently independent to state a separate state law cause of action for breach of contract."). Other courts have held that a plaintiff may pursue a state law claim notwithstanding

5

z

HAMP as long as a prima facie claim has been stated under state law.  E.g., Fletcher v. Onewest Bank, FSB, —F. Supp. 2d—, No. 10 C 4682, 2011 WL 2648606, at *3-8 (N.D. Ill. 2011); Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 350-53 (D. Mass. 2011).  In this District, Judge Doty ruled that state law claims could be dismissed on the basis that "there is no private right of action under HAMP" but then considered the merits of the state law claims without reference to HAMP.  Cox v. Mortgage Elec. Registration Sys., Inc., —F. Supp. 2d—, Civil No. 10-4626, 2011 WL 2600700, at *3-5 (D. Minn. 2011).  This Court previously noted the evolving debate regarding the effect of HAMP on state law claims, but declined to resolve the issue because none of the claims in that previous case entitled the plaintiffs to relief under Minnesota law.  Ming'ate v. Bank of Am., N.A., Civil No. 11-1787, 2011 WL 4590431, at *3 (D. Minn. Sept. 30, 2011).

The essence of the issue is preemption.  State law imposes duties and obligations on mortgage servicers irrespective of HAMP.  For example, under Minnesota law, mortgage servicers cannot defraud their clients.  See Dahl v. R.J. Reynolds Tobacco Co., 742 N.W.2d 186, 192-95 (Minn. Ct. App. 2007) (noting that under Minnesota law a general duty not to make false statements exists, and holding that fraud claim against cigarette manufacturer was not preempted by the Federal Cigarette Labeling and Advertising Act); see also Graham v. Knutson Mortgage Corp., No. CT 94-11043, 1996 WL 407491, at *3-9 (Minn. 4th Jud. Dist. Ct. June 18, 1996) (certifying class action by home owners against mortgage servicer related to escrow funds alleging, inter alia, intentional misrepresentation).  This duty does not flow from HAMP, nor is it altered by HAMP.  See Dahl, 724 N.W.3d at 192-95.  Therefore, to suggest, as PNC does, that state law claims are precluded merely because the factual basis of those claims include a

6

reference to HAMP is equivalent to arguing that HAMP preempts such claims. See Boyle v. United Tech. Corp., 487 U.S. 500, 507 (1988) (stating that "[d]isplacement [of state law] will occur *only* where" significant conflict exists between state and federal laws) (emphasis added) (citations omitted).

Federal preemption of state law comes in one of four "flavors:" (1) "express preemption," resulting when Congress explicitly calls for federal law to have preemptive effect, (2) "implied preemption," resulting from an inference that Congress intended to preempt state law, (3) "conflict preemption," resulting when federal and state law actually conflict, and (4) "field preemption," resulting from a determination that Congress intended to remove an entire area from state regulatory authority. Kinley Corp. v. Iowa Utilities Bd., 999 F.2d 354, 358 n.3 (8th Cir. 1993).

Here, HAMP does not preempt Plaintiffs' state law claims. The first and second "flavors" of preemption are not implicated, HAMP neither expressly states it will have preemptive effect and nothing in its provisions leads to that inference. In fact, in promulgating administrative guidance for HAMP, the Secretary expressly instructed mortgage servicers to comply with applicable state laws. Handbook v3.3 24, Ch. I § 1.6; see also Handbook v3.3 97, Ch. II § 10.1 (instructing servicers to amend uniform HAMP documents to comply with state law).

Furthermore, Plaintiffs' state law claims do not actually conflict with HAMP's requirements. Plaintiffs assert claims for breach of contract, promissory estoppel, negligent misrepresentation, consumer fraud, and deceptive trade practices. Nothing would prohibit PNC from both complying with HAMP's requirements and complying with the general duties

7

imposed by the state law claims.³  See Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991) (noting that conflict preemption occurs when it is physically impossible to comply with both federal and state regulations or state law stands as an obstacle to accomplishing goals of federal law) (citations omitted).

Finally, HAMP does not preempt the field of home loan modification.  Field preemption occurs when "federal regulation [is] so pervasive that the only reasonable inference is that [Congress] meant to displace the states" from their own regulation.  Wuebker v. Wilbur-Ellis Co., 418 F.3d 883, 885 (8th Cir. 2005) (citation omitted).  HAMP was designed to target a narrow subset of home loans, those that were in imminent threat of a foreclosure that could be avoided through modification.  Servicers and borrowers remained free to modify home loans under common law principles of contracts or pursuant to other federal, state, or local programs–HAMP does not preempt the field of home loan modification.

The Court's holding with respect to HAMP preemption is in accord with the persuasive weight of authority in this area.  While some courts have allowed HAMP to preclude state causes of action on its own force, they have not addressed the issue of preemption.  See, e.g., Cox, 2011 WL 2600700, at *3 (noting that dismissal of state law claims was warranted because HAMP did not provide a private right of action without discussing preemption); Wigod, 2011 WL 250501, at *4-10 (dismissing state law claims that were not independent of HAMP without discussing preemption).  On the other hand, most courts expressly considering preemption have held that HAMP does not preclude state law causes of action.  See, e.g., Kennedy v. Wells Fargo Bank, N.A., No. CV 11-4635, 2011 WL 4526085, at *2 (C.D. Cal. Sept. 28, 2011) (rejecting argument

---

³ This is not to say that Minnesota law could never conflict with HAMP, but only that Plaintiffs' claims here, on their face, do not directly conflict with HAMP such that compliance with both Minnesota law and HAMP would be impossible or stand as obstacle to accomplishing the purposes of HAMP.

that HAMP preempted plaintiff's claims under conflict preemption); Fletcher, 2011 WL 2648606, at *3-4 (holding HAMP does not preempt state law claims); Wright v. Chase Home Finance, LLC, No. CV 11-00095-PHX-FJM, 2011 WL 4101513, at *2 (D. Ariz. Sept. 14, 2011) (agreeing with Fletcher that HAMP does not have preemptive effect).

In fact, many of the cases holding that HAMP precludes state law causes of action, such as Bourdelais and Wigod, rely on Vida. A close examination of Vida, however, reveals that the court there rejected the argument that all state law claims are precluded if related to HAMP. Vida, 2010 WL 5148473, at *5 ("[T]he court does not agree with Defendants' premise that they are wholly immunized for their conduct so long as the subject transaction is associated with HAMP."). Instead, the Vida court considered the state law claims as alleged and dismissed them on their merits under state law. Id. at *4-8.

In summary, the mere fact Plaintiffs' claims arise from a fact pattern implicating HAMP does not preclude them from asserting claims premised upon the common law and statutory law of Minnesota. HAMP does not preempt those claims. Therefore, the Court will now consider the underlying merits of those claims as alleged in the Complaint.

**C.     Breach of Contract**

In Minnesota, a breach of contract claim requires proof of three elements: (1) the formation of a contract; (2) the plaintiff's performance of conditions precedent; and (3) the defendant's breach of the contract. Briggs Transp. Co. v. Ranzenberger, 299 Minn. 127, 129 (1974). Contract formation requires communication of a specific and definite offer, acceptance, and consideration. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626–27 (Minn. 1983). Furthermore, Minnesota law imposes heightened writing requirements on certain credit agreements, including home loan modifications. Minn. Stat. § 513.33; see also Myrlie v. Countrywide Bank, 775 F. Supp. 2d 1100, 1109 (D. Minn. Feb. 23, 2011) (noting that home loan

9

modification was a credit agreement under Minn. Stat. § 513.33, subd. 3(a)(3)). Under Minnesota law, credit agreements must be "in writing, express[] consideration, set[] forth the relevant terms and conditions, and [be] signed by the creditor and debtor." Minn. Stat. § 513.33, subd. 2.

Plaintiffs contend that the September 2010 Letter formed a valid enforceable contract. As a matter of law, Plaintiffs cannot maintain an action based on the September 2010 Letter because it is not a valid credit agreement. The September 2010 Letter, while in writing, does not set forth the relevant terms and conditions of a modified home loan as required by Minn. Stat. § 513.33, subd. 2. Specifically, the letter does not set forth an interest rate or permanent monthly principal and interest payment for the new agreement, among other things. See generally September 2010 Letter. Therefore, Plaintiffs' breach of contract claim is dismissed with prejudice.

**D.     Promissory Estoppel**

Plaintiffs also allege a claim for promissory estoppel. Plaintiffs argue that the September 2010 Letter was an enforceable promise to modify their home loan. In light of the Minnesota legislature's decision to heighten writing requirements for credit agreements, Minnesota courts have held that plaintiffs are barred from asserting a promissory estoppel claim where they lack a sufficient writing under Minn. Stat. § 513.33, subd. 2. Grueling v. Wells Fargo Home Mortgage, Inc., 690 N.W.2d 757, 761-62. Indeed, "[w]ere it otherwise, plaintiffs could make an easy end-run around the [statute]." Brisbin v. Aurora Loan Svcs., LLC, No. 10-2130, 2011 WL 1641979, at *3 (D. Minn. May 2, 2011). Accordingly, without a writing that satisfies Minn. Stat. § 513.33, subd. 2, as discussed above, Plaintiffs promissory estoppel claim must be dismissed with prejudice.

### E. Negligent Misrepresentation

Minnesota has adopted the Restatement (Second) of Torts' definition of negligent misrepresentation as:

> One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Bonhiver v. Graff, 248 N.W.2d 291, 299 (Minn. 1976) (citing Restatement (Second) of Torts § 552 (Tentative Draft No. 12, 1966)). A claim for negligent representation must be pled with particularity. Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010).

The parties' dispute focuses on whether PNC owed Plaintiffs a duty in communicating information about their home loan modification. PNC argues that it had no such duty. However, the cases cited by PNC for the proposition that a bank owes no duty to its clients are generally in the context of failure to disclose cases, see Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 622-23 (Minn. 1972) (holding that bank had no duty to disclose material facts to customer because it did not stand in a confidential relation to her); Hurley v. TCF Banking & Sav., F.A., 414 N.W.2d 584, 586-88 (Minn. Ct. App. 1987) (holding bank had no duty to disclose tax consequences of transaction to customers), or in an arm's length commercial deal between businesses on equal footing, see Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424-25 (holding bank owed no duty to title insurance company).

Plaintiffs here were not on equal footing with PNC with respect to the loan modification process and Plaintiffs do not allege any failure to disclose or omission on the part of PNC. Rather, Plaintiffs argue that PNC had a duty to truthfully communicate the contents of the September 2010 Letter. It is well established that one "who speaks must say enough to prevent his words from misleading the other party." Klein, 196 N.W.2d at 421; see also Davis v. U.S.

11

Bancorp, 383 F.3d 761, 769 (8th Cir. 2004) (holding that bank owed customer a duty of care in communicating information in home loan pre-approval letter). Therefore, because PNC chose to send Plaintiffs the September 2010 Letter, it owed them a duty of care in communicating the contents of the letter.

PNC further argues that Plaintiffs' Complaint fails to allege with particularity the other requisite elements of a negligent misrepresentation claim. Specifically, PNC argues that a promise about future action (loan modification) cannot serve as the basis of a negligent misrepresentation claim, and in any event that Plaintiffs have not alleged how they relied on the September 2010 Letter. Plaintiffs argue, without citing to the Complaint, that a future promise can form the basis of a negligent misrepresentation claim if the promisor never intended to carry out the promise. Further, Plaintiffs argue they relied on the letter by sending PNC the trial payments. Plaintiffs also ask for leave to amend their Complaint to cure any deficiencies. Even with the suggested amendments to the Complaint, Plaintiffs are not suffering from an impending threat of injury and therefore this case is not ripe for judicial review.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." KCCP Trust v. City of North Kansas City, 432 F.3d 897, 899 (8th Cir. 2005) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). Plaintiffs' alleged injury is not having received a modification. However, the injury recoverable under a negligent misrepresentation theory is limited to the injury caused by Plaintiffs' *reliance*. Bonhiver, 248 N.W.2d at 299 (emphasis added). Plaintiffs aver that they relied by sending payments to PNC. Such reliance was not injurious to them; they had a continuing contractual obligation to make mortgage payments to PNC. See Schooler Aff. Ex. B (noting that making trial payments was "the first step toward lowering [Plaintiffs'] mortgage payments"). In fact, the trial payments submitted were *less* than Plaintiffs' previous monthly mortgage payment

obligation.  See Handbook v3.3 74–78, Ch. II §§ 6.1–6.3 (explaining how monthly mortgage payments are reduced under HAMP from an amount greater than 31% of borrower's monthly gross income to 31% of monthly gross income); Handbook v3.3 89, Ch. II § 8.3 (extending 31% calculation to trial period payments).

Beyond making trial payments, Plaintiffs have not identified any way in which they relied on the representations in the September 2010 Letter that they would receive a loan modification.  In other cases such as this, where a home loan modification is not granted to mortgagees in default, reliance is often alleged to have caused the mortgagee to forego other foreclosure avoidance strategies and therefore resulted in an otherwise avoidable foreclosure.  See, e.g., Brisbin, 2011 WL 1641979, at *4 (rejecting for lack of evidentiary support on motion for summary judgment arguments that plaintiff relied on promise to modify by avoiding borrowing from friends, obtaining a different bank loan, or selling her home to avoid foreclosure).  In this case, however, PNC has not foreclosed Plaintiffs' mortgage.  Nor does the record reflect *any* steps by PNC that indicate a present intention to begin foreclosure proceedings.  As such, Plaintiffs could presently be pursuing alternatives to a HAMP loan modification that could avoid the threat of foreclosure.  Therefore, this case would benefit from further factual development while Plaintiffs are not suffering from an impending threat of injury.  Plaintiffs' negligent misrepresentation claim is not ripe, and is dismissed without prejudice.  See Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) (noting that unripe due process claim should be dismissed without prejudice).

**F.     Minnesota Consumer Fraud Act and Minnesota Deceptive Trade Practices Act**

The Minnesota Deceptive Trade Practices Act ("MDTPA") prohibits individuals from engaging in a deceptive trade practice by creating "a likelihood of confusion or of misunderstanding."  Minn. Stat. § 325D.44, subd. 1(13).  The Minnesota Consumer Fraud Act

13

("MCFA") prohibits "the act . . . of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69.

Private citizens may pursue private claims under the MDTPA or MCFA only through Minnesota's Private Attorney General Statute, which limits such actions to those that benefit the public. Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000) (interpreting Minn. Stat. § 8.31, subd. 3a); see also DeVary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1109 (D. Minn. 2010) (dismissing MDTPA claim where plaintiff failed to allege a public benefit as required under Minn. Stat. § 8.31, subd. 3a); Buscher v. Brown & Brown, Inc., No. A08-1813, 2009 WL 2595937, at *5 (Minn. Ct. App. Aug. 25, 2009) (holding that MCFA claims fail as a matter of law where based on one-on-one transactions with no public benefit). One-on-one transactions do not fulfill the public benefit requirement of the Private Attorney General Statute. Ly, 615 N.W.2d at 314. Rather, claims benefit the public when misleading statements or deceptive trade practice are directed to the "public at large." Collins v. Minn. School of Bus., Inc., 655 N.W.2d 320, 330 (Minn. 2003). In deciding whether a claim is brought for the public benefit, courts examine both the form of the alleged misrepresentation and the relief sought by the plaintiff to determine what public interests are at stake. In re Levaquin Prods. Liability Litig., 752 F. Supp. 2d 1071, 1077 (D. Minn. 2010) (quotation omitted).

Plaintiffs' MDTPA and MCFA claims both fail as a matter of law because they lack a public benefit. Plaintiffs' Complaint avers that "PNC has participated in similar illegal and unlawful transactions with other consumers," Compl. ¶ 43, and seeks "an injunction . . . prohibiting PNC from committing any similar wrongful acts in the future affecting other consumers," id. ¶ 44. To be fair, the September 2010 Letter does have the appearance of a form letter that may have been sent to other PNC clients. Nonetheless, alleging that some other

14

people may have received a similar letter is insufficient to invoke the private attorney general's statute.  Cf. Flora v. Firepond, Inc., 260 F. Supp. 2d 780, 788 (D. Minn. 2003) (dismissing MCFA claims against corporation for lack of public benefit where communications were made only to shareholders and not the public at large).  The letter at issue, which includes the challenged statements, was sent only to PNC customers and only those customers identified as potentially eligible for a HAMP loan modification.  Further, to the extent that the letter is misleading, it is only misleading to those clients that did not receive a modification and not to those clients whose loans were actually modified, presumably an even smaller subset of the subset of PNC customers that were being considered for HAMP.  This is a group of people far smaller than the "public at large."  Therefore, because Plaintiffs' MDTPA and MCFA claims do not adequately allege a public benefit, they are dismissed with prejudice.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. PNC's Motion to Dismiss [Docket No. 5] is **GRANTED**, and
2. Plaintiffs' claim for negligent misrepresentation is **DISMISSED WITHOUT PREJUDICE**, and all other claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 13, 2011.